UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT PADUCAH

**RICHARD J. STREEVAL**
    Plaintiff

v.                                                                                                                                                                            No. 5:04CV-143-J

**JO ANNE B. BARNHART**
    Commissioner of Social Security
    Defendant

**MAGISTRATE JUDGE'S REPORT**
**and RECOMMENDATION**

This matter is before the court upon the plaintiff's complaint seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. § 405(g). The plaintiff is represented by Nan Calloway. The fact and law summaries of the plaintiff and the defendant are at Docket Entry Nos. 17 and 18, respectively. This matter has been referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636.

The final decision of the Commissioner was rendered on March 3, 2004, by administrative law judge (ALJ) James Craig. In support of his decision denying Title II benefits, Judge Craig entered the following numbered findings:

    1. The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

    2. The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

    3. The claimant's degenerative disc disease of the lumbar spine, degenerative joint disease of the left knee, bowel and bladder incontinence, obesity, anxiety and depression are considered "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).

    4. These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

  5. The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

  6. The claimant retains the residual functional capacity to perform sedentary work. The record supports the claimant can lift and carry up to 10 pounds, stand and walk at least two hours, and sit about six hours in an eight-hour workday. He can perform no repetitive pushing and pulling with his upper and lower extremities. The claimant requires the use of a cane for ambulation. He can occasionally stoop, but should never kneel, crouch or crawl. Additionally, he should avoid using vibratory tools, exposure to extreme temperature changes and humidity, and working at unprotected heights. Due to his mental impairment, the claimant is unable to perform detailed or complex jobs.

  7. The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

  8. The claimant is a "younger individual" (20 CFR § 404.1563).

  9. The claimant has four years of college (20 CFR § 404.1564).

  10. The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR § 404.1568).

  11. The claimant has the residual functional capacity to perform a significant range of sedentary work (20 CFR § 404.1567).

  12. Although the claimant's exertional limitations do not allow him to perform the full range of sedentary work, using Medical-Vocational Rule 201.28 as a framework for decision-making, there are a significant number of unskilled, sedentary jobs in the national economy that he could perform. Examples of such jobs include 70,000 bookkeepers/accountants, 87,000 information clerks, and 16,000 credit authorizers/checkers.

  13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

(Administrative Record (AR), pp. 20-21).

## Governing Legal Standards

  1. The court has jurisdiction to examine the record that was before the Commissioner on the date of the Commissioner's final decision and to enter a judgment affirming, modifying, or reversing that decision. 42 U.S.C. § 405(g), sentence four. In exercising its "sentence four" jurisdiction, the court is limited to determining whether the Commissioner's controlling findings are supported by substantial evidence and whether the Commissioner employed the proper legal

standards in reaching her decision. *Richardson v. Perales*, 402 U.S. 389 (1971). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Kirk v. Secretary of Health and Human Services*, 667 F.2d 524 (6th Cir., 1981). It has been described as a sufficient amount of evidence "to justify, if the trial were to a jury, a refusal to direct a verdict." *Sias v. Secretary*, 861 F.2d 475, 480 n. 1 (6th Cir., 1988). In determining whether the Commissioner's findings are supported by substantial evidence, the court must examine the evidence in the record taken as a whole and must take into account whatever in the record fairly detracts from its weight. *Wyatt v. Secretary*, 974 F.2d 680 (6th Cir., 1992). However:

> The substantial-evidence standard allows considerable latitude to administration decision makers. It presupposes that there is a zone of choice within which the decision makers can go either way, without interferences by the courts. An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.

*Mullen v. Secretary*, 800 F.2d 535, 545 (6th Cir., 1986).

When conducting substantial evidence review, the court is restricted to a consideration of the evidence that was before the Commissioner on the date of the final decision. When the Appeals Council declines to review the ALJ's decision and render a new decision, the ALJ's decision becomes the Commissioner's final decision. *Cotton v. Secretary*, 2 F.3d 692 (6th Cir., 1993).

2. To be entitled to disability insurance benefits (DIB), a claimant must be under the age of 65 years, must meet the insured status requirements of Title II of the Social Security Act, and must be under a disability as defined by the Act.

3. Disability determination is a five-step sequential evaluation process, to-wit:

**STEP #1** The claimant must not be engaged in substantial gainful activity.

**STEP #2** The alleged disabling impairment must be "severe." A "severe" impairment is one that "significantly limits" a claimant's ability to do "basic work activities" that are "necessary to do most jobs" such as walking, standing, sitting, lifting, seeing, hearing, and speaking. 20 C.F.R. § 404.1521. Only a "slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education and work experience" is "nonsevere." *Farris v. Secretary*, 773 F.2d 85, 89-90 (6th Cir., 1985). Any physical or mental impairment that has more than a <u>de minimis,</u> or significant, effect on the claimant's ability to work is "severe," and the sequential evaluation should proceed to Step #3. In addition, the "severe" impairment must satisfy the so-called duration requirement, to-wit, the impairment must be expected to result in death or "must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. § 404.1509.

**STEP #3** If the claimant has a medical condition that meets or exceeds the criteria for an impairment defined in Appendix 1 of 20 C.F.R. Part 404, Subpart P of the regulations ("the Listing"), a conclusive presumption attaches that the claimant is disabled.

**STEP #4** The claimant must not be able to perform his past relevant work either as he actually performed it or as it generally performed in the national economy.

**STEP #5** If the claimant makes a <u>prima facie</u> showing that he cannot perform his past relevant work, the burden of going forward with evidence shifts to the Commissioner to show that a significant number of jobs exist in the national economy that the claimant can perform. *Born v. Secretary*, 923 F.2d 1168 (6th Cir., 1990). Accordingly, the focus of judicial review in Step #5 cases is typically whether the controlling hypothetical posed to the vocational expert reflected all vocationally significant physical and mental limitations actually suffered by the claimant. *Varley v. Secretary*, 820 F.2d 777 (6th Cir., 1987).

**Discussion**

The plaintiff was born on September 21, 1962. In 1983, while in the Army, he was standing on the bumper of a five-ton tractor trailer checking the oil with the hood raised. Someone released the clutch and the plaintiff fell backwards, got his foot caught between the radiator guard and bumper, and twisted his left hip, knee, and ankle out of joint. The injury resulted in a medical discharge in 1984, and reconstructive surgeries in 1988, 1992, 1995, and 1996. The plaintiff uses a cane and knee and ankle braces to ambulate. Although he resumed working after his injury, the plaintiff has experienced several mishaps and falls over the years due to lower extremity instability. In 1997, he fell down a flight of stairs and injured his back. Thereafter, he was diagnosed with a spinal cord injury and a neurogenic bowel and bladder secondary to the fall. The Department of Veterans Affairs has deemed the plaintiff to be 60% disabled.

In his application for Social Security disability benefits, the plaintiff alleged that he became disabled on June 24, 2001, at 38 years of age, when he was let go from his last job, which, interestingly, was working for the Florida Disability Determination Division processing Social Security disability claims. The plaintiff identified as his primary basis for disability that he "cannot work regular business hours due to bowel and bladder control problems, have accidents regularly" (AR, p. 71). He stated that "[i]f I didn't have the bowel and bladder problems, I think I could work" (AR, p. 152). The plaintiff is also obese and suffers from post-traumatic stress syndrome as a result of a car-jacking and severe beating that occurred in 1992. Although the plaintiff has a four-year college degree in business administration and has performed skilled work in the past, the ALJ found that the plaintiff's mental impairments render him no longer able to perform detailed or complex jobs. ALJ's Finding No. 6.

The plaintiff testified that "I do have some control over the bowel, but it's immediate and once I have the urge to use the restroom, I have to get there immediately or I have an accident in my pants," requiring him to go home to shower and change clothes (AR, p. 460). The plaintiff normally catheterizes himself once a day before bedtime, although he has been told that he needs to catheterize more frequently. He wears Depends, and, on a typical day, he has to change them twice a day in the early afternoon and early evening (AR, pp. 460-461).

The plaintiff alleges that he was terminated because he "closed only 243 of 250 SSI/SSD claims required during my probationary period and was terminated for that without consideration of the seriousness of my problems and the time off to go to doctors and leaving work due to accidents," which sometimes required him to "go home to shower and change clothes" (AR, pp. 35 and 78). The plaintiff argues that no employer, apparently not even one that would be expected to be particularly sensitive to special needs and disabilities, "will put up with an employee with those problems" (AR, p. 36). Consistent with the plaintiff's position of lack of tolerance by employers, the following exchange occurred at the hearing (AR, pp. 260-270):

> **ALJ:** If an individual had to take additional breaks during the day [from the unskilled, sedentary jobs noted in ALJ's Finding No. 12], two to three times a day other than breaks and meals lasting anywhere from a fourth to an hour – mostly lasting up to a fourth of an hour, what impact would that have on those jobs and any other jobs?
>
> **Vocational Expert (VE):** Unscheduled breaks wouldn't be permitted.
>
> **ALJ:** If he wasn't able to do eight hours a day, five days a week on a regular competitive basis, would he be able to do those jobs or any other jobs?
>
> **VE:** No. That would be less than full-time employment.

There is ample medical evidence that the plaintiff suffers from bowel and bladder incontinence following his fall in 1997, which is consistent with his testimony of a need for

unscheduled breaks. See, for example, AR, pp. 434 ("patient has an atonic bladder as well as fecal incontinence due to neurologic injury ... he needs to do self-catheterization frequently"), 249 (patient has "history of back injury when he fell down stairs 1997 with residual numbness lower limbs and bowel/bladder problems"), 313 ("wears several pads during the course of the day .. has both stress and urge components ... started after a fall in 1997"), and 317 ("relates having urinary leakage intermittently every day ... relates also has some degree of fecal incontinence approximately three times a week").

This case was denied at the fifth and final step of the sequential evaluation process. At this step, the Commissioner has the burden of going forward with evidence of nondisability. The magistrate judge concludes that the plaintiff adequately put the ALJ on notice that he was alleging disability due to a regular and recurring need for unscheduled absences from the work site for the purposes of going to the bathroom, changing his Depends, and/or cleaning up after accidents.

In his written decision, the ALJ acknowledged that the plaintiff suffers from "severe" "bowel and bladder incontinence" (AR, p. 16). However, the ALJ found only that the plaintiff "reported that he has to wear Depends due to bowel and bladder incontinence and has to catheterize himself at night" (AR, p. 18). The ALJ did not further discuss the plaintiff's condition or make any specific finding concerning the frequency and duration, if any, of his need for unscheduled absences from the work site. Similarly, in her fact and law summary before this court, the Commissioner makes only one passing reference to the same facts acknowledged by the ALJ in his written decision (Docket Entry No. 18, p. 7). While the Commissioner may be somewhat uncomfortable doing so, the plaintiff is entitled to have an express consideration of the precise condition which he maintains renders him unemployable.

In light of the vocational testimony, the ALJ implicitly rejected as incredible the plaintiff's allegation of a need for unscheduled breaks. However, it is not self-evidence that the wearing of Depends alone, which the ALJ mentioned, eliminates all vocationally-relevant problems related to incontinence. The Commissioner correctly states that it lies within the ALJ's province, as finder of fact, to make credibility findings (Docket Entry No. 18, p. 6). Nevertheless, the ALJ is required to articulate his credibility rationale with sufficient particularity to allow a reviewing court to conduct a meaningful "substantial evidence" review. In this case, the plaintiff's testimony of a need for unscheduled breaks, which the VE testified would render him unemployable, is consistent with the medical evidence. The magistrate judge concludes that the ALJ's decision rationale is inadequate for this court to conclude that the ALJ's implicit finding of no significant need for unscheduled absences from the work site is supported by substantial evidence. In light of the plaintiff's express allegation of disability due to incontinence, the ALJ's decision failed to satisfy the Commissioner's fifth-step burden of going forward with evidence of non-disability. A remand is necessitated for a new decision addressing the frequency and duration of the plaintiff's need, if any, to absent himself from the work site due to bladder and bowel incontinence and the vocational impact thereof.

For completeness' sake, we shall address the plaintiff's remaining contentions. First, the plaintiff alleges that his left knee and left ankle condition satisfy the criteria of Listing 1.02(A) at the third step of the sequential evaluation process. At the third "Listing" step, the burden of going forward with evidence is upon the claimant. Listing 1.02(A) provides that the following medical condition is per-se disabling:

> **Major dysfunction of a joint(s) (due to any case):** Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b.

According to Medical Proof of Social Security Disability (Second Edition) § 2:4:

> Gross deformity is not just icky, it really looks wrong. These are places that should bend but don't, things that should be symmetrical and aren't, things that are out of place or the wrong shape. Subluxation describes a joint where the bones are misaligned or out of place, contracture is a fixed, abnormal position of a joint, ankylosis is an abnormal scar-like or bone connection that stiffens a joint and instability is the inability of the joint to stay together to function normally.

An x-ray dated February 2, 2002, revealed the following (AR, p. 159) *(emphasis added)*:

> Left ankle: 3 views: I see no soft tissue swelling. There is no fracture or dislocation. There are accessory ossicles inferior to the lateral and medial malleoli incidentally noted. A small calcaneal spur is present.
> Impression: Small calcaneal spur at the plantar fascial attachment site, otherwise **unremarkable left ankle**.
>
> Left knee: 2 views: The soft tissues are normal. There is no joint effusion. There is no fracture, dislocation, or degenerative change.
> Impression: **Normal left knee.**

The plaintiff experienced another fall in October of 2002. However, subsequent medical examination revealed that the injury was "well healed" (AR, p. 316). While the plaintiff may experience some back and knee pain with prolonged strenuous activities, there is no indication that he is completely unable to ambulate effectively. The magistrate judge concludes that the plaintiff has failed to demonstrate the presence of a gross anatomical deformity and/or inability to ambulate effectively. The plaintiff has failed to show that he satisfied the Listing.

Finally, the plaintiff argues that the ALJ committed a reversible error in connection with his rejection of the disabling findings of orthopedic surgeon Frederic Huffnagle (AR, pp. 434-437). Dr. Huffnagle examined the plaintiff at the plaintiff's own request on December 23, 2003, after the administrative hearing, which occurred on December 16, 2003. In his written decision, the ALJ found as follows (AR, p. 17):

> The undersigned gives little weight to the assessment of Dr. Huffnagle, as it is unsupported by objective evidence. There is no evidence of an examination of the claimant and it appears to be based only on subjective complaints reported by the claimant.

The plaintiff first submitted evidence to the Appeals Council that Dr. Huffnagle did, in fact, examine him on December 23, 2003 (Appeals Council (AC) Exhibit No. 1) (AR, pp. 442-444). In light of this evidence, the plaintiff attempts to fault the ALJ for simply "assuming" that Dr. Huffnagle did not examine him. The argument is unpersuasive because AC Exhibit No. 1 was not properly before the ALJ and, hence, may not be considered by this court upon judicial review. See <u>Cotton v. Secretary</u>, 2 F.3d 692 (6th Cir., 1993) (when conducting substantial evidence review, courts within the Sixth Circuit may not consider any evidence that was before the ALJ). In light of the evidence before him, the ALJ did not err in rejecting Dr. Huffnagle's assessment as unsupported by sufficient objective medical data. Nevertheless, if the district judge adopts our recommendation and remands this matter for the independent reasons identified here, there is no reason why, upon remand, the ALJ may not now consider AC Exhibit No. 1 if submitted by the plaintiff.

## RECOMMENDATION

The magistrate judge RECOMMENDS that this matter be REMANDED to the Commissioner for a new decision addressing the frequency and duration of the plaintiff's need, if any, to absent himself from the work site due to bladder and bowel incontinence and the vocational impact thereof and for consideration of the evidence at AC Exhibit No. 1.

## NOTICE

Pursuant to 28 U.S.C. § 636 and Fed.R.Civ.P. 6(e), the parties shall have thirteen (13) days from the date of notice of electronic filing to file written objections to the foregoing report with the Clerk of Court. The court shall not conduct a <u>de novo</u> review of objections that are general, conclusory, or merely adopt previous pleadings. A party may file a response to another party's objections within ten (10) days after being served a copy thereof. Fed.R.Civ.P. 72(b). A copy of the objections shall be served on the undersigned at Suite 330, 501 Broadway, Paducah, Kentucky, 42001. Failure of a party to file timely objections shall constitute a waiver of the right to appeal by that party. *Thomas v. Arn*, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).